UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

MATEO DE LA CRUZ CASARRUBIAS,

                                Plaintiff,                    REPORT AND
                                                             RECOMMENDATION
                -against-
                                                             20-CV-3003 (AMD)
SURF AVE WINE & LIQUOR INC., *et al.*,

                                Defendants.
-----------------------------------------------------------------x

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

        In this wage-and-hour action, plaintiff Mateo De la Cruz Casarrubias ("plaintiff") sues

his former employers, defendants Surf Ave Wine & Liquor Inc. ("Surf Co." or the "Company")

and Wei Qin Xu, also known as "Mickey," to recover for deficiencies in the wages he was paid

and for related damages.  See generally Complaint (July 7, 2020) ("Compl."), Electronic Case

Filing ("ECF") Docket Entry ("DE") #1.[1]  Currently pending before this Court, on a referral

from the Honorable Ann M. Donnelly, is plaintiff's motion for default judgment.  See Motion for

Default Judgment (Nov. 20, 2020) ("Pl. Mot."), DE #11; Order Referring Motion (Nov. 23,

2020).

        For the reasons that follow, this Court recommends that default judgment be entered

against all defendants, jointly and severally, in the amount of $41,817.50 (plus interest, as

described herein), consisting of $10,230 in unpaid minimum wages and overtime wages, $4,104

in unpaid spread-of-hours premiums, $14,334 in liquidated damages, $10,000 in statutory

damages, $2,617.50 in attorneys' fees, $532 in costs, and, if certain conditions are met, a fifteen

percent increase in the damages awarded exclusively under the New York Labor Law.

---

[1] Although the Complaint is styled as a putative collective action, plaintiff never moved for conditional certification.

## BACKGROUND

Plaintiff's Complaint seeks damages from defendants for their failure to pay overtime and minimum wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law § 650 *et seq.* ("NYLL"), violations of New York's spread-of-hours provision, <u>see</u> N.Y. Comp. Code R & Regs. Tit. 12, § 142-2.4,[2] as well as for defendants' failure to provide wage notices and wage statements under the NYLL's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law §§ 195(1)(a), 195(3); <u>see</u> Compl. ¶¶ 10-11.[3]   Plaintiff served copies of the Summons and Complaint to Surf Co. through the Secretary of State.  <u>See</u> Affidavit of Service on the Company (July 13, 2020) ("Aff. of Corp. Service"), DE #4.  As later detailed in this Opinion, <u>see</u> *infra* Part II.A., plaintiff's process server handed a copy of the Summons and Complaint to the individual defendant, Wei Qin Xu, at his principal place of business at Surf Co. <u>See</u> Affidavit of Service on Wei Qin Xu (Aug. 21, 2020) ("Delprete Aff."), DE #5; <u>see also</u> Compl. ¶¶ 1-3.  Following defendants' failure to timely respond to the Complaint, plaintiff requested that a certificate of default be entered against Surf Co. and Wei Qin Xu, <u>see</u> Request for Certificate of Default (Aug. 21, 2020), DE #7, and the Clerk of the Court thereafter entered a notation of default, <u>see</u> Clerk's Entry of Default (Aug. 28, 2020), DE #9.  Plaintiff moved for default judgment on November 20, 2020.  <u>See</u> Pl. Mot.

Plaintiff alleges that he worked for defendants at their liquor store from approximately September 2018 until on or about February 28, 2020, as a stock worker and cashier.  <u>See</u> Compl. ¶¶ 32, 33; Declaration of De La Cruz Casarrubias (Nov. 20, 2020) ("Pl. Decl.") ¶¶ 8-9, DE #12.

---

[2] In complaining of spread-of-hours violations, plaintiff cites the wrong New York regulation.  <u>See</u> *infra* pp. 12-13.

[3] The tenth paragraph in the Complaint is erroneously divided into two paragraphs, one numbered 10 and the other numbered 11.

Though plaintiff's Complaint avers that he worked for defendants for 74 hours over the course of six days each week,[4] in all subsequent submissions to the Court, plaintiff states that he worked a total of four days per week, for a weekly total of 50 hours: from 10:00 a.m. to 10:00 p.m. on each of three days per week, and on Saturdays from 10:00 a.m. until 12:00 midnight.  See Pl. Decl. ¶ 13, DE #12; see also Damages Chart (Nov. 20, 2020), DE #13-1; Plaintiff's Memorandum (Nov. 20, 2020) ("Pl. Mem.") at 2, DE #14.

Plaintiff claims that defendants willfully violated the FLSA and the NYLL by failing to pay him minimum and overtime wages.  See Compl. ¶¶ 48, 59-78; Pl. Decl. ¶¶ 15, 18, 21; Pl. Mem. at 4; Damages Chart.  Additionally, plaintiff alleges that defendants further violated the NYLL in denying him a spread-of-hours premium, see Compl. ¶¶ 79-82; Pl. Mem. at 5, Damages Chart, and in failing to provide him with pay stubs or a wage notice in English or his primary language, Spanish.  See Compl. ¶¶ 83-88; Pl. Decl. ¶¶ 17, 19-20; Pl. Mem. at 7.

Following Judge Donnelly's referral of the motion for default judgment to the undersigned magistrate judge, this Court issued an order to directing defendants to respond to the motion by January 15, 2021.  See Order (Dec. 27, 2020) ("December Order"), DE #15.  When plaintiff failed to file proof that he had served the December Order on defendants, the Court *sua sponte* extended defendants' deadline to respond to March 19, 2021.[5]  See Order (Feb. 24, 2021). Thereafter, plaintiff submitted proof of service of that order on defendants, see Certificate of Service (Feb. 25, 2021), DE #17, and, to date, neither Wei Qin Xu nor Surf Co. has responded or otherwise appeared in this action.

---

[4] In the Complaint, which at one point erroneously describes plaintiff's period of employment as extending from "September 2018 until on or about February 20, 2018 [sic]," Compl. ¶ 37, plaintiff alleges that he worked from Monday through Friday from 10:00 a.m. to 10:00 p.m., and from 10:00 a.m. on Saturday until 12:00 a.m. on Sunday, see id.

[5] Plaintiff belatedly filed proof that counsel had mailed the December Order on December 29, 2020.  See Dec. 29, 2020 Certificate of Service (Feb. 24, 2020), DE #16.

## DISCUSSION

**I.    Default Judgment Standard**

After the Clerk of the District Court enters a Certificate of Default, the District Court

may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or

otherwise defend" an action.  See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local

Civ. R. 55.2(b).  A defendant's default ordinarily constitutes an admission of all well-pleaded

factual allegations in the complaint except those relating to damages.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis

Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).

This principle is, however, subject to several exceptions and limitations.  First, a

pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment,

the factual allegations in the complaint must themselves be sufficient to establish a right to relief.

See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4

(E.D.N.Y. Mar. 18, 2016), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016) (citing Stein v.

Valentine & Kebartas, Inc., No. 10 CV 2465(RJD), 2012 WL 1416924, at *4-5 (E.D.N.Y. Mar.

15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is

"required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a

matter of law").  Nor will a complaint's factual allegations be considered "well-pleaded" where

they are "contrary to the uncontroverted material in the file of the case[.]"  Chuchuca v. Creative

Customs Cabinets Inc., No. 13-CV-2506 (RLM), 2014 WL 6674583, at *5 (E.D.N.Y. Nov. 25,

2014) (quoting Trans World Airlines v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other

grounds, 409 U.S. 363 (1973)); see Getty Images (US) Inc. v. Advernet, Inc., 797 F.Supp.2d 399,

4

439 (S.D.N.Y. 2011).  Moreover, the damages amount pleaded by a plaintiff is not deemed to be established by the default; the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)).  It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether to hold an evidentiary hearing.  See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).

## II.   Service of the Complaint

### A.   Service on the Individual Defendant

Pursuant to Rule 4 of the Federal Rules of Civil Procedure ("FRCP"), service on an individual may be effected by:

(1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Similarly, under the law of New York, the forum state herein, service on a natural person may likewise be accomplished "by delivering the summons within the state to the person to be served[.]"  N.Y.C.P.L.R. § 308(1).

Plaintiff purported to serve defendant Wei Qin Xu, a/k/a Mickey, by leaving the relevant documents with a man at 3030 Mermaid Avenue in Brooklyn, the address of Surf Co.  See Delprete Aff.  While Donald Delprete, the process server, gave the Summons and Complaint to a man who refused to state his name, the affidavit of service shows that Mr. Delprete reasonably inferred that the recipient of the documents was the individual defendant.  After reviewing the documents, the man did not deny that he was Wei Qin Xu, stating only that he thought the store was under new ownership; a customer independently corroborated that the man who declined to give his name was the individual defendant by referring to the recipient of the documents by his nickname, "Mickey."  Id.  Mr. Delprete's affidavit therefore describes service that complies with federal and New York law, and, as a process server's affidavit of service constitutes *prima facie* evidence of proper service, and no contrary evidence has been presented, the presumption that service was proper stands unrebutted.  See Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc., 301 F.3d 54, 57-58 (2d Cir. 2002).[6]

## B.      Service on the Corporate Defendant

Rule 4 of the FRCP permits service on a corporation in a manner authorized by the law of the forum state.  See Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).  New York law provides for service of process on a corporation through New York's Secretary of State.  See N.Y. Bus. Corp. Law § 306(b)(1).

---

[6] Mr. Delprete's Affidavit of Service, which was docketed as "SUMMONS Returned Executed [on] Wei Qin Xu," see 8/21/20 Docket text, references, in its heading, service on the individual defendant "WEI QIN XU C/O SURF WINE & LIQUOR, INC."  See Delprete Aff.  However, on the same document, Mr. Delprete also checked a box that service was made on a "Corporation or Partnership."  See id.  Errors in a process server's affidavit are not in and of themselves jurisdictional defects where the error does not call into question the validity of service.  See Wilson v. Lowe's Home Ctr., Inc., 401 F.Supp.2d 186, 189 (D. Conn. 2005) ("Failure to sign a certificate of service is considered to be a matter of form, at least when service is actually made."); Dow v. Jones, 232 F.Supp.2d 491, 497 (D. Md. 2002) (alleged inaccurate description of defendant in affidavit of service did not invalidate service of process where defendant did not deny being served, and the court was satisfied that he had actual notice of the action).  This Court concludes that the checking of the incorrect box is a "a mere irregularity and not a jurisdictional defect."  Mendez v. Yoo, 806 N.Y.S.2d 67, 69 (2d Dep't 2005) (citation omitted); see Reem Contracting v. Altschul & Altschul, 986 N.Y.S.2d 446, 448 (1st Dep't 2014).

Plaintiff served Surf Co. through the Secretary of State.  See Aff. of Corp. Service.

Accordingly, plaintiff properly served the Company.

**III.    Liability**

> **A.    The Fair Labor Standards Act – Legal Principles**

> > **1.    Employer/Employee Relationship**

The FLSA mandates that "no employer shall employ any of his employees . . . for a

workweek longer than forty hours unless such employee receives compensation for his

employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate

at which he is employed."  29 U.S.C. § 207(a)(1).  The FLSA defines an "employer" to include

"any person acting directly or indirectly in the interest of an employer in relation to an employee

. . . ."  Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work").

An employee may bring suit against her employer where the employee was "engaged in

commerce or in the production of goods for commerce," or where the employer is "an enterprise

engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an

annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

An employee may simultaneously have multiple "employers" for purposes of

determining responsibility under the FLSA.  Indeed, the regulations promulgated by the United

States Department of Labor under the FLSA recognize that there may be joint liability for FLSA

violations.  See 29 C.F.R. § 791.2; see also Zheng v. Liberty Apparel Co., 355 F.3d 61, 66 (2d

Cir. 2003) (collecting cases that permit claims against joint employers under the FLSA).  In

order to determine whether an employer-employee relationship exists for FLSA purposes, courts

have adopted an "economic realities" test, "grounded in 'economic reality rather than technical

concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of

the whole activity.'"  Barfield v. N.Y.C. Health & Hospitals Corp., 537 F.3d 132, 141 (2d Cir.

2008) (citing Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Rutherford Food

Corp. v. McComb, 331 U.S. 722, 730 (1947)).

        The Second Circuit has identified four factors that a court should address in applying, on

a case-by-case basis, the economic realities test when determining employer status: "whether the

alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records."  Carter v. Dutchess Cmty. Coll., 735 F.2d 8,

12 (2d Cir. 1984) (internal quotations and citations omitted).  Even in the absence of "formal

control," an entity or individual may constitute an "employer" if that party had "functional

control" of the employee.  See Glatt v. Fox Searchlight Pictures Inc., 293 F.R.D. 516, 526

(S.D.N.Y. 2013) (citing Zheng, 355 F.3d at 72), vacated and remanded on other grounds, 811

F.3d 528 (2d Cir. 2016).  Accordingly, "a corporate officer with operational control of a

corporation's covered enterprise is an employer along with the corporation . . . ."  Moon v.

Kwon, 248 F.Supp.2d 201, 237 (S.D.N.Y. 2002) (Lynch, J.) (quotation and citation omitted); see

Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).  Consequently, joint

employers, including corporate officers with the "power to control," may be held jointly and

severally liable for FLSA violations.  See Moon, 248 F.Supp.2d at 236-37 (citations omitted).

### 2.      Violations of the FLSA

        Under the FLSA, an employee must "be compensated at a rate of no less than one and

one-half times the regular rate of pay for any hours worked in excess of forty per week."

Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013) (citing 29

U.S.C. § 207(a)).  The FLSA further dictates that nonexempt employees must be paid a

minimum wage, see 29 U.S.C. § 206(a), which, for the entire period of plaintiff's employment, was $7.25 per hour, see id. § 206(a)(1)(C).  In order to establish liability under the FLSA for unpaid minimum wages or overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)).  Employers who violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

### B.    New York Labor Law – Legal Principles

The NYLL is similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees,[7] as well as overtime compensation.  See N.Y. Lab. Law § 650 et seq.; Gunawan v. Sake Sushi Rest., 897 F.Supp.2d 76, 84 (E.D.N.Y. 2012) ("The NYLL mirrors the FLSA in most but not all respects.").  Like the FLSA, for purposes of the NYLL, an employee may have multiple "employers."  See Glatt, 293 F.R.D. at 526 ("Courts use the same tests to determine joint employment under both the NYLL and the FLSA.") (citation omitted).  One area in which the NYLL differs from the FLSA is the NYLL's requirement, by regulation, that an employer pay employees a "spread-of-hours" premium that is equal to "one hour's pay at the basic minimum hourly wage rate, . . . for any day in which (a) the spread of hours exceeds 10 hours[.]"  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4(a).

---

[7] The minimum wage required under the NYLL is, however, higher than the rate mandated under the FLSA.  See infra p. 15 n.9.

Unlike the FLSA, the NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage . . . ; the regular pay day . . . ; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay." N.Y. Lab. Law § 195.1(a). Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages." N.Y. Lab. Law § 195(3).

## C.  Liability in This Case

Having set forth the relevant legal standards under the FLSA and NYLL, the Court now considers whether the factual allegations asserted in plaintiff's Complaint are sufficient to warrant a finding of liability against each defendant. See Fed. R. Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137. [8]

### 1.  Liability of Wei Qin Xu and Surf Co.

Plaintiff has sufficiently alleged that the individual defendant and the Company were his joint employers for the purposes of the FLSA and NYLL. Plaintiff has established that Surf Co. operated the liquor store where he worked. Compl. ¶¶ 2, 4; Pl. Decl. ¶¶ 3-4. With respect to the

---

[8] Plaintiff brings his FLSA claims pursuant to a theory of "enterprise" coverage. See Compl. ¶ 29 ("Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000"); id. ¶ 30 ("Defendants and/or their enterprise were directly engaged in interstate commerce."); see also Pl. Decl. ¶ 11. In the context of a motion for default judgment, courts have found similar conclusory but uncontested allegations to be sufficient to satisfy the interstate commerce requirement. See Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-CV-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).

individual defendant, plaintiff's complaint alleges that Wei Qin Xu "possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation."  Compl. ¶ 20.  Plaintiff further states that Wei Qin Xu "determines the wages and compensation of the employees of Defendants, including Plaintiff De la Cruz Casarrubias, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees."  Id.; see also Pl. Decl. ¶ 5 ("[Wei Qin Xu] had the power to hire and fire me, control my terms and conditions of employment, and determine the rate and method of my compensation").  Despite receiving notice of this lawsuit, both defendants failed to respond.  The allegations contained in the Complaint are sufficient to find that Wei Qin Xu and Surf Co. were plaintiff's "employers" under the FLSA and the NYLL.  See, e.g., Herman, 172 F.3d at 139  ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case.") (quotation and citations omitted); Vargas v. Jet Peru-Courier Corp., 15-CV-6859 (RRM) (PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018), adopted, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018); Peralta v. M & O Iron Works, Inc., No. 12-CV-3179 (ARR) (RLM), 2014 WL 988835, at *5 (E.D.N.Y. Mar. 12, 2014).

### 2.   **Minimum Wage**

Plaintiff alleges that defendants failed to pay him the minimum wage rate for each hour of work that he performed.  See Compl. ¶¶ 9, 45, 47, 60-64, 71-74.  Both the FLSA and the NYLL require that employees be paid a minimum hourly rate.  See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.  Plaintiff was paid $12.00 per hour for the duration of his employment.   See Compl. ¶ 39; see also Pl. Decl. ¶ 15.  At the commencement of plaintiff's employment, the

applicable NYLL minimum wage rate was $12.00, which was increased to $13.50 per hour starting on December 31, 2018 and then to $15.00 starting on December 31, 2019.  See *infra* p. 15 n.9.  Plaintiff therefore states a claim for failure to pay the minimum wage under the NYLL as of the pay period following December 31, 2018.  In contrast, because the minimum wage rate under the FLSA remained at $7.25 per hour throughout plaintiff's employment, see 29 U.S.C. § 206(a)(1)(C), plaintiff has not stated a claim under the FLSA for a minimum wage violation.

### 3. Overtime

Plaintiff alleges that he regularly worked 50 hours per week and that defendants did not pay him the requisite premium for the 10 overtime hours.  See Compl. ¶¶ 39, 67, 76; Pl. Decl. ¶¶ 13, 15, 16.  Plaintiff has sufficiently alleged claims against defendants for deficiencies in his overtime pay under the FLSA and the NYLL.

### 4. New York's Spread-of-Hours Provisions

Plaintiff also alleges a violation of NYLL's spread-of-hours provision but cites the wrong regulation in connection with that claim.  Plaintiff's pleading and other submissions erroneously cite to N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6, a regulation that is limited to "employees in restaurants and all-year hotels"; plaintiff overlooks the applicable state regulation, N.Y. Comp. Code R. & Regs. tit. 12, § 142-2.4, which requires that employers pay a spread-of-hours premium to any employee in New York City who works more than ten hours consecutively and whose pay does not exceed minimum wage.  Plaintiff's compensation was either minimum wage or below throughout the term of his employment, and he worked in excess of 10 hours consecutively each shift he worked.  See Compl. ¶¶ 7, 45; see Pl. Decl. ¶¶ 13, 15-16.  Plaintiff's factual assertions sufficiently allege a spread-of-hours violation, see Peralta, 2014 WL 988835, at *6, and counsel's citation to the wrong regulatory provision should not prevent plaintiff from

recovering damages for spread-of-hours violations under the appropriate regulation, see Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc., No. 16-CV-1907 (ENV)(RML), 2017 WL 7625319, at *3 (E.D.N.Y. Nov. 7, 2017) (recommending a spread-of-hours premium where plaintiff's counsel failed to specify the exact regulation in the pleading, and made a short reference to the regulation in the memorandum of law); see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc., No. 18-CV-04761 (ARR) (ST), 2019 WL 4889591, at *9 (E.D.N.Y. Sept. 10, 2019),adopted, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (though plaintiff did not qualify for the hospitality exemption, court awards a spread-of-hours premium for shifts in which plaintiff earned below minimum wage and worked for 10 hours consecutively).

### 5.   Wage Theft Prevention Act

Plaintiff sufficiently alleges that defendants neither provided the wage notice required by section 195(1) of the NYLL, see Compl. ¶¶ 42, 44, 50, 55, 84; Pl. Decl. ¶ 19, nor wage statements, in violation of section 195(3) of the NYLL, see Compl. ¶¶ 43, 54, 87; Pl. Decl. ¶ 17. Therefore, plaintiff has adequately stated claims for violations of the WTPA.

## IV.   Damages

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiff's Complaint as to defendants' liability, it need not give the same deference to plaintiff's allegations regarding damages.  Instead, the Court must perform an inquiry to determine the extent of damages to a "reasonable certainty."  Credit Lyonnais Sec., 183 F.3d at 155.

Under both the FLSA and NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."  Chen, 2016 WL 2909966, at *9 (quoting Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089(KAM)(SMG), 2011 WL

4962397, at *2 (E.D.N.Y. Oct. 18, 2011)).  "Where, as here, defendants, having defaulted, failed

to produce the requisite records, 'a plaintiff may meet his or her burden of establishing how

many hours he or she worked 'by relying solely on his or her recollection.'"  Chen, 2016 WL

2909966, at *9 (citation omitted); see Vilchis, 2016 WL 6106478, at *5.  Nevertheless, the Court

must ensure that plaintiff's approximations and estimates are reasonable and appropriate.  See

Jemine v. Dennis, 901 F.Supp.2d 365, 376-79 (E.D.N.Y. 2012).

### A.    Wage-and-Hour Claims

Before calculating plaintiff's damages, the Court must address threshold issues

concerning the number of hours plaintiff worked each week, and the appropriate minimum wage

and overtime wage.

### 1.    Hours Worked Per Week

Plaintiff alleges in the Complaint that he worked approximately 74 hours per week, but,

in all subsequent filings, and in his sworn statement, he avers that he worked approximately 50

hours per week.  Compare Compl. ¶ 37 with Pl. Decl. ¶ 13; Damages Chart; Pl. Mem. at 2.  The

Court calculates damages based on the lesser of the two allegations.  See generally Chuchuca,

2014 WL 6674583, at *5.  All of plaintiff's submissions consistently allege that he was paid

$12.00 per hour for every hour worked, see Compl. ¶ 39; Pl. Decl. ¶¶ 15, 16; Pl. Mem. at 2, and

that he was paid in cash, see Compl. ¶ 49; Pl. Decl. ¶ 14; Pl. Mem. at 2, 6.

### 2.    Regular Hourly Rate of Pay and Overtime Rate

To calculate a plaintiff's minimum wage and overtime wage compensation, the Court

must first determine the plaintiff's regular hourly wage rate.  Where, as here, the employee "is

employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'"  29

C.F.R. § 778.110(a); see Candelario-Salazar v. Kings II Deli & Grocery, Inc., No. 20-CV-760

(MKB) (SMG), 2020 WL 8413558, at *4 (E.D.N.Y. Dec. 28, 2020), adopted, 2021 WL 129062 (E.D.N.Y. Jan. 14, 2021).  It is uncontested that plaintiff's hourly rate was $12.00 for the duration of his employment, below the applicable NYLL minimum wage starting on December 31, 2018, and the pleading thus establishes a NYLL minimum wage violation for hours worked on and after that date.[9]

Turning next to plaintiff's claim for unpaid overtime pay, which is calculated as one and one-half times the regular rate, the Court, using the applicable NYLL minimum wage rate (which at times exceeded plaintiff's $12.00 hourly rate of pay), determines the overtime premium owed to plaintiff.  See Calle v. Yoneles Enters., Inc., 16-CV-1008 (NGG), 2017 WL 6942652, at *14 (E.D.N.Y. Oct. 24, 2017), adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018).

Plaintiff's damages for defendants' minimum wage violations (totaling $4,080) and for unpaid premium overtime pay (totaling $6,150) are calculated as follows:

---

[9] In 2018, the NYLL minimum wage rate for small employers in New York City was $12.00 through December 30, 2018, then it increased to $13.50 through December 30, 2019, at which point it was raised to $15.00.  See N.Y. Lab. Law §652(1)(a)(ii).  The federal minimum wage rate was $7.25.  See 29 U.S.C. § 206(a)(1)(C).  This Court applies the higher of the two rates.  See 29 C.F.R. § 778.5; Fermin, 93 F.Supp.3d at 43.

Large employers, i.e., those who employ eleven or more employees, and small employers who employ ten or fewer employees, are treated differently under the NYLL.  Compare N.Y. Lab. Law § 652(1)(a)(i) with N.Y. Lab. Law § 652(1)(a)(ii).  Where, as here, plaintiff failed to provide information regarding the size of his employer's workforce, the Court applies the rate for small employers.  See, e.g., Reyes v. Lincoln Deli Grocery Corp., 17-cv-2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (applying small-employer rate where the "Complaint [was] completely silent as to how many people [defendant] employ[ed]" and, as such, "there [was] no evidentiary basis for the Court to calculate damages based on the higher rate."), order clarified, 2018 WL 3105070 (S.D.N.Y. June 25, 2018).

| Weeks | Reg. Wage | Min. Wage | Owed Min. Wage | OT Wage | Owed OT | Paid Wage | OT & Min Wage Underpayment per week | Underpayment |
|---|---|---|---|---|---|---|---|---|
| 9/1/18 – 12/30/18 (17 weeks) | $ 12.00 | $12.00 | 0 | $18.00 | $ 60.00 | $600.00 | $60.00 | $1,020.00 |
| 12/31/18 – 12/30/19 (52 weeks) | $ 12.00 | $13.50 | $60 | $20.25 | $ 82.50 | $600.00 | $142.50 | $7,410.00 |
| 12/31/19 – 2/28/20 (8 weeks) | $ 12.00 | $15.00 | $120 | $22.50 | $105.00 | $600.00 | $225.00 | $1,800.00 |
| | | | | | | | **Total:** | **$ 10,230.00** |

The Court therefore recommends an award of $10,230.00 to compensate plaintiff for defendants' minimum wage and overtime violations, consistent with plaintiff's damages calculation.  See Damages Chart at 1.[10]

### 3.    Spread-of-Hours Compensation

By regulation, New York workers who earn no more than minimum wage are entitled to compensation of one hour's pay at the basic minimum wage rate for each day worked in excess of 10 hours.  See Peralta, 2014 WL 988835, at *8 (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4).  It is unchallenged that while defendants employed plaintiff, all of his shifts exceeded 10 hours and that his pay never exceeded $12.00 per hour.  See Compl. ¶ 37; Pl. Decl. ¶ 13.

Plaintiff is therefore entitled to the spread-of-hours ("SOH") pay as requested:

---

[10] Plaintiff's memorandum of law, which apparently was copied from a filing in a different case, includes an erroneous reference to plaintiff's entitlement to damages "in the amount of $251,899.49, plus attorneys' fees."  Pl. Mem. at 4.

| Period | NYLL Min. Wage | No. of Days per Week Worked Over 10 Hours | No. of Weeks in Period | Total SOH Owed for Period |
|---|---|---|---|---|
| 9/1/18 – 12/30/18 | $12.00 | 4 | 17 | **$816.00** |
| 12/31/18 – 12/30/19 | $13.50 | 4 | 52 | **$2,808.00** |
| 12/31/19 – 2/28/20 | $15.00 | 4 | 8 | **$480.00** |
| | | | **Total:** | $4,104.00 |

Accordingly, the Court recommends that plaintiff be awarded $4,104.00 in unpaid spread-of-hours wages.  See Damages Chart at 2.

**B.    Liquidated Damages**

Plaintiff requests liquidated damages under the FLSA and/or the NYLL.  See Compl. ¶ 11; Pl. Mem. at 6-7; Damages Chart at 2.

Under the FLSA, an employer who violates overtime and/or minimum wage compensation requirements is liable for "an additional equal amount as liquidated damages," unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.  See 29 U.S.C. §§ 216(b), 260.  Here, plaintiff's allegation that defendants' violations were willful is unchallenged and, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.  See Peralta, 2014 WL 988835, at *10.  Therefore, plaintiff is entitled to an award of liquidated damages under the FLSA for defendants' overtime violations.

The NYLL similarly authorizes an award of liquidated damages for a prevailing plaintiff's unpaid wages, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."  N.Y. Lab. Law § 663(1).

17

Liquidated damages under the NYLL are calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.  See id.

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct."  Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiff $10,230.00 in liquidated damages for unpaid minimum wages under the NYLL and for unpaid overtime wages under the NYLL or the FLSA.  Plaintiff is also entitled to NYLL liquidated damages on $4,104.00 in spread-of-hours compensation.  See Peralta, 2014 WL 988835, at *12.

### C.      Statutory Damages under the WTPA

Under the WTPA, plaintiff is entitled to "$50 per workday after February 27, 2015, up to $5,000 for failure to provide a wage notice."  Gil v. Frantzis, 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *8 (E.D.N.Y. Aug. 17, 2018), adopted as modified on other grounds, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018); see N.Y. Lab. Law § 198(1-b).  Moreover, plaintiff is also entitled to "$250 per workday for each workday after February 27, 2015, up to $5,000 for failure to provide a wage statement."  Gil, 2018 WL 4522094, at *10; see N.Y. Lab. Law § 198(1-d).

Plaintiff never received a proper wage notice or a proper wage statement.  See Compl. ¶ 42, 44; see also Pl. Decl. ¶ 19; Pl. Mem. at 7.  As plaintiff worked for defendants for over 100 days, he is entitled to recover the statutory maximum for both the wage notice and the wage statement violations.  Therefore, the Court recommends that the District Court award plaintiff a

total of $10,000 from defendants, jointly and severally, for violating the WTPA's wage notice and statement requirements.

### D. <u>Interest</u>

#### 1. <u>Prejudgment Interest</u>

Plaintiff requests prejudgment interest pursuant to New York law.  <u>See</u> Compl. at p. 17; Pl. Mem. at 4, 8.  "Although it is 'well settled that prejudgment interest is not awardable under FLSA where liquidated damages are awarded, NYLL permits the award of both liquidated damages and prejudgment interest." <u>Lopez v. Royal Thai Plus</u>, 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *12 (E.D.N.Y. Feb. 6, 2018) (citations and quotations omitted), <u>adopted</u>, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018).  Prejudgment interest is available for unpaid overtime and/or minimum wages under the NYLL, but not for amounts awarded under the WTPA, <u>see</u> <u>Martinez v. Alimentos Saludables Corp.</u>, 16 CV 1997 (DLI) (CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or on liquidated damages, <u>see</u> <u>Fermin</u>, 93 F.Supp.3d at 49.

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both FLSA and NYLL." <u>Thomas v. Good Vision Taste Inc.</u>, No. 17 CV 6084 (FB)(LB), 2018 WL 4268909, at *7 (E.D.N.Y. Apr. 17, 2018) (quotations omitted), <u>adopted as modified on other grounds</u>, 2019 WL 4265868 (E.D.N.Y. Sept. 5, 2018). Having considered the rationales of the two competing lines of cases, this Court concludes that, since "prejudgment interest may not be awarded in addition to liquidated damages" for FLSA violations, <u>see</u> <u>Brock v. Superior Care, Inc.</u>, 840 F.2d 1054, 1064 (2d Cir. 1988), plaintiff is entitled to prejudgment interest on compensatory damages awarded under the NYLL only to the extent that he is not being awarded liquidated damages under the functionally equivalent claim for damages under the FLSA, <u>see, e.g.</u>, <u>Demirovic v. Ortega</u>, 15 CV 327 (CLP), 2018 WL

1935981, at *7 (E.D.N.Y. Apr. 24, 2018), aff'd, 711 F.App'x 111 (2d Cir. 2019); Piedra v. Ecua

Rest., Inc., 17 CV 3316 (PKC) (CLP), 2018 WL 1136039, at *16 (E.D.N.Y. Jan. 31, 2018),

adopted as modified, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018); Santillan v. Henao, 822

F.Supp.2d 284, 298 (E.D.N.Y. 2011).  Here, because the Court is recommending that plaintiff

receive damages for minimum wage violations only under the NYLL, plaintiff should be

awarded prejudgment interest on that claim and his spread-of-hours claim, but not on his claims

for unpaid overtime wages.

      "Under New York law, prejudgment interest is calculated at a rate of 9% per annum."

Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17 (E.D.N.Y.

Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001).  Interest may be calculated from "the earliest

ascertainable date the cause of action existed."  N.Y.C.P.L.R. § 5001(b).  Where, however,

"damages were incurred at various times, interest shall be computed . . . from a single reasonable

intermediate date."  Id.  The date from which to compute prejudgment interest is left to the

"wide" discretion of the court.  See Conway v. Icahn & Co., 16 F.3d 504, 512 (2d Cir. 1994)

(upholding award of prejudgment interest from the date the action was commenced); RKI

Constr., LLC v. WDF Inc., No. 14-cv-1803(KAM)(VMS), 2020 WL 6545915, at *22 (E.D.N.Y.

Nov. 6, 2020).

      In this case, a reasonable intermediate date for calculating plaintiff's unpaid minimum

wages is July 31, 2019, which is the midpoint between December 31, 2018 and February 28,

2020, the period during which the NYLL minimum wage rate exceeded the $12.00 hourly rate

that defendants paid plaintiff.  Cf. Asfaw v. BBQ Chicken Don Alex No. 1 Corp., No. 14-CV-

5665 (CBA) (RML), 2015 WL 13731362, at *7 (E.D.N.Y. Aug. 26, 2015).  However, plaintiff

was denied spread-of-hours pay for his entire period of employment, including 17 weeks that

preceded the increase in the NYLL minimum wage from $12.00 to $13.50 per hour.  <u>See</u> SOH

Chart, *supra* p. 17.  The midpoint between September 18, 2018 and February 28, 2020 is June 9,

2019.  In these circumstances, the Court recommends the use of two different intermediate dates

for calculating prejudgment interest.  <u>See</u> <u>Lopez v. SGRA Corp.</u>, CV 2014-5225 (SJ) (MDG),

2016 WL 8711350, at *9 (E.D.N.Y. Mar. 31, 2016) (using different midpoints to calculate

interest on the unpaid wages and spread-of-hours damages because those claims accrued during

different time periods).

Using those two different midpoints, plaintiff is entitled to nine percent prejudgment

interest on his unpaid spread-of-hours premiums (totaling $4,104) from June 9, 2019, at a daily

rate of $1.01 (($4,104 x .09) ÷ 365), until entry of judgment; and is entitled to nine percent

prejudgment interest on his NYLL minimum wages damages (totaling $4,080), from July 31,

2019, at daily rate of $1.01 (($4,080 x .09) ÷ 365), until entry of judgment.

## 2.   Post-Judgment Interest

Plaintiff also requests post-judgment interest.  <u>See</u> Compl. at p. 17.  Pursuant to 28 U.S.C.

§ 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district

court."  Therefore, the Court recommends that plaintiff be awarded post-judgment interest "to be

calculated from the date the Clerk of the Court enters judgment in this action until the date of

payment, at the rate set forth in 28 U.S.C. § 1961."  <u>Sajvin v. Singh Farm Corp.</u>, No. 17-CV-

04032, 2018 WL 4214335, at *8 (E.D.N.Y. Aug. 13, 2018), <u>adopted</u>, 2018 WL 4211300

(E.D.N.Y. Sept. 4, 2018).

E.      **Attorneys' Fees and Costs**

1.      **Applicable Legal Standard**

Under both the FLSA and NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorneys' fees and costs.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1).  Plaintiff bears the burden of proving the reasonableness of the fees sought.  See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).  In considering an application for attorneys' fees, the Court must first determine the presumptively reasonable fee.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  This presumptively reasonable fee — or lodestar[11] — is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotations omitted).

Courts can and should exercise broad discretion in determining a reasonable fee award.  See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion").  The method for determining reasonable attorneys' fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorneys' customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases.  See Arbor Hill, 522 F.3d at 186 n.3, 190.  In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits.  This is known as the "forum rule."  See Simmons, 575 F.3d at

---

[11] The lodestar is the product of the number of hours reasonably expended on the litigation and a reasonable hourly rate.  See Arbor Hill, 522 F.3d at 183 ("The fee—historically known as the 'lodestar'—to which [ ] attorneys are presumptively entitled is the product of hours worked and an hourly rate.").

174-75 (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We

presume, however, that a reasonable, paying client would in most cases hire counsel from within

his district, or at least counsel whose rates are consistent with those charged locally.").

      Once the Court determines the reasonable hourly rate, it must multiply that rate by the

number of hours reasonably expended, in order to determine the presumptively reasonable fee.

See Arbor Hill, 522 F.3d at 190.  With very limited exceptions, "contemporaneous time records

are a prerequisite for attorney's fees in this Circuit."  N.Y. State Ass'n for Retarded Child., Inc.

v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).  The Court must review these time records and the

hours an attorney billed in order to determine the reasonableness of such and, in doing so, should

examine the value of the work product and "'exclude excessive, redundant or otherwise

unnecessary hours.'"  Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319

(ARR)(VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting Quaratino v. Tiffany

& Co., 166 F.3d 422, 425 (2d Cir. 1999)), adopted, 2010 WL 2539661 (E.D.N.Y. June 17,

2010); see also Hensley, 461 U.S. at 434; Lunday v. City of Albany, 42 F.3d 131, 133 (2d Cir.

1994).  "[A] fee award should be based on scrutiny of the unique circumstances of each case

. . . ."  McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citations and

quotations omitted).

      In this case, plaintiff seeks $3,780 in attorneys' fees for time expended by Michael

Faillace, Kevin Johnson, and an unnamed employee from plaintiff's counsels' firm, Michael

Faillace & Associates, P.C ("Faillace PC").  See Declaration of Michael Faillace (Nov. 20, 2020)

("Faillace Decl.") ¶ 3(iii), DE #13; Attorney Billing (Nov. 20, 2020) ("Atty. Bill"), DE #13-2;

Pl. Mem. at 8.

## 2. **Reasonable Hourly Rate**

Plaintiff requests an hourly rate of $450 for the work performed by Michael Faillace,[12]

$375 for Kevin Johnson, and $150 for the unnamed firm employee.[13]  See Atty. Bill.  "Courts in

this District have held reasonable hourly rates in FLSA cases to be approximately $300-450 for

partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$80 for legal

support staff."  Miranda v. Astoria Provisions, LLC, 19-CV-02923 (EK) (PK), 2020 WL

6370058, at *10 (E.D.N.Y. July 24, 2020) (internal citations omitted), adopted, 2020 WL

5810160 (E.D.N.Y. Sept. 30, 2020); see also Sarmiento Perez v. Comhar Grp. LLC, No. 19-CV-

0964 (FB) (JO), 2020 WL 1364908, at *8 (E.D.N.Y. Mar. 6, 2020) (approving hourly rates of

$375 for Mr. Faillace, $200 for a senior associate, and  $75 for legal assistants), adopted, 2020

WL 1332200 (E.D.N.Y. Mar. 23, 2020).

As noted *supra*, Mr. Faillace's requested rate is at the high end of the rates typically

awarded to partners in FLSA cases in this District.  To be sure, Mr. Faillace is an experienced

litigator, but given the default posture of this case, and the various errors in plaintiff's

submissions, the Court recommends an hourly rate of $375.  See Miranda, 2020 WL 6370058, at

*10 (collecting cases in this District in which Mr. Faillace was awarded a rate of $375 or less per

hour); see also Baizan Guerrero, 2019 WL 4889591, at *12 (collecting cases in which courts in

this district awarded Mr. Faillace an hourly rate of $350).

Plaintiff requests $375 per hour for Kevin Johnson's work, but, as noted *supra*, this

proposed rate exceeds hourly rates that are traditionally granted in FLSA cases to senior

---

[12] In the attorney declaration and most invoice entries, plaintiff seeks $450 per hour for Mr. Faillace, but in the July 7, 2020 invoice entry, plaintiff calculated the cost of Mr. Faillace's time based on a $375 hourly rate.  Compare Faillace Decl.  ¶  3(iii)(i) with Atty Bill.  The Court presumes that this discrepancy is a typographical error.

[13] The invoice is internally inconsistent regarding the requested rate for the individual listed as PL, and the Court presumes that plaintiff's counsel requests $150 per hour for PL's work, the higher of the two listed rates.  Compare June 22, 2020 entry on Atty. Bill at 1 with July 7, 2020 entry on Atty. Bill at 1.

associates in this District.  Despite this high request, plaintiff's counsel failed to provide basic

information about Mr. Johnson's credentials or experience, such as the year he graduated from

law school, the number of years he has practiced law, and rates other courts have deemed

reasonable for his work.  See, e.g., Faillace Decl. ¶ 3(iii)(iii) ("Kevin Johnson is an associate

attorney and his work is billed at the rate of $375 per hour").  According to Mr. Johnson's

biography on the website of Faillace & Associates, PC, "Kevin S. Johnson is an Associate

Attorney with seven years of experience . . . ," who "focused on personal injury litigation" before

joining Faillace P.C.)  See Biography of Kevin Johnson, FAILLACE & ASSOCIATES, PC (last

visited May 9, 2021).  Given the straightforward nature of this case and default judgment motion,

and plaintiff's failure to provide information on Mr. Johnson's experience, this Court

respectfully recommends an hourly rate of $200 for Mr. Johnson.  See Sarmiento Perez, 2020

WL 1364908, at *8 (awarding $200 hourly rate in a FLSA default to an associate with seven

years of experience); see also Hernandez v. Delta Deli Mkt. Inc., No. 18-CV-00375 (ARR)

(RER), 2019 WL 643735, at *10 (E.D.N.Y. Feb. 12, 2019) (recommending $150 per hour for

associates who had been practicing for seven years).

Though not described in plaintiff's other submissions, the Faillace PC invoice lists an

unnamed individual with the initials PL, with an hourly rate of $150.[14]  In the absence of

information to the contrary, the Court infers that the unnamed individual is a paralegal.  In this

District, $150 per hour for the work of a paralegal in a default wage and hour case is higher than

the rate normally awarded for comparable work.  See e.g., Sarmiento Perez, 2020 WL 1364908,

at *8 (recommending $75 hourly rate for a paralegal's work in a FLSA default case).  Here,

plaintiff's counsel has provided no additional information about this unnamed individual's

---

[14] Plaintiff's fee request erroneously states that the third individual who worked on the case was former senior attorney Joshua Androphy.  Compare Faillace Decl. ¶ 3(iii)(ii) with Atty. Bill.

identity or qualifications.  Accordingly, this Court respectfully recommends awarding $75 per hour.  See also Miranda, 2020 WL 6370058, at *11 (where no information was provided about the qualifications and experience of the individual, recommending $60 for a Faillace PC paralegal).

### 3.     <u>Reasonable Number of Hours</u>

Counsel claims that he and his colleagues spent 15.2 hours on this matter and submits contemporaneous time records to substantiate the time charges.  See Atty. Bill.  The overall time spent is reasonable.

Accordingly, this Court recommends awarding attorneys' fees as follows:

| Individual | Hours | Requested Rate | Recommended Rate | Recommended Fees |
|---|---|---|---|---|
| MF | 3.8 | $450 | $375 | $1,425.00 |
| KSJ | 2.7 | $375 | $200 | $540.00 |
| PL | 8.7 | $150 | $75 | $652.50 |
| **Total** | **15.2** | | | **$2,617.50** |

Applying the reduced hourly rates to the number of hours reflected in counsel's billing records, the Court recommends awarding attorneys' fees in the amount of $2,617.50.

### 4.     <u>Costs</u>

Plaintiff further requests an award of $532 for filing fees and costs incurred in effecting service of process.  See Compl. at p. 17; Atty. Bill at 3; Pl. Mem. at 8.  As a general matter, a prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendants, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), as long as those costs are tied to "[i]dentifiable, out-of-pocket disbursements," see Fan v. Jenny & Richard's Inc, 17-CV-6963 (WFK), 2019 WL 1549033, at *15-16 (E.D.N.Y. Feb. 22, 2019) (citation omitted), adopted,

2019 WL 1547256, (E.D.N.Y. Apr. 9, 2019).  Since the costs incurred here are routinely

recoverable, the Court recommends awarding plaintiff costs in the requested amount of $532.

### 5.    **Automatic Increase in Judgment**

In a single sentence on the final page of his memorandum of law, plaintiff requests that

the judgment provide that the total amount awarded shall increase automatically by fifteen

percent if the conditions specified in NYLL §198 (4) have been met.  See Pl. Mem. at 8; see also

Compl. at p. 17.  In pertinent part, the state statute provides:

> Any judgment or court order awarding remedies under this section shall provide that if
> any amounts remain unpaid upon the expiration of ninety days following issuance of
> judgment, or ninety days after the expiration of the time to appeal and no appeal is then
> pending, whichever is later, the total amount of judgment shall automatically increase by
> fifteen percent.

N.Y. Lab. Law § 198(4).

In construing the scope of section 198(4), the court in Rodriguez v. Solares Corp., 16-

CV-3922 (CBA) (SMG), 2018 WL 7252949, at *12 (E.D.N.Y. Aug. 14, 2018), adopted, 2019

WL 486883 (E.D.N.Y. Feb. 7, 2019), looked to the holdings in Demirovic and Piedra, which

involved prejudgment interest, and concluded that section 198(4) of the NYLL should likewise

apply only to those portions of the judgment based exclusively on state law violations.

Consistent with the persuasive ruling and rationale in Rodriguez, this Court recommends that the

conditional section 198(4) enhancement in this case should be limited to the damages arising out

of defendants' minimum wage violations, spread-of-hours violations and wage notice and

statement violations.

## CONCLUSION

For the foregoing reasons, the Court recommends that plaintiff's motion for default judgment be granted in substantial part, and that plaintiff be awarded the following against defendants, jointly and severally: $41,817.50, representing $10,230 in unpaid overtime wages and minimum wages, $4,104 in spread-of-hours premiums, $14,334 in liquidated damages, $10,000 in WTPA damages, $2,617.50 in attorneys' fees, and $532 in costs.  The Court also recommends awarding prejudgment interest on the spread-of-hours and minimum wage violations under the NYLL, to be calculated by the Clerk of the Court in two parts: first, starting from June 9, 2019, nine percent interest on $4,104 at a daily rate of $1.01 until the final judgment is entered, and second, starting from July 31, 2019, nine percent interest on $4,080 at a daily rate of $1.01 until the final judgment is entered; post-judgment interest; and, pursuant to NYLL § 198(4), a fifteen percent increase in the total amount of damages for NYLL violations "if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after the expiration of the time to appeal and no appeal is then pending, whichever is later[.]"

Any objections to the recommendations contained herein must be filed with Judge Ann M. Donnelly on or before May 28, 2021.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF court file and to send copies to each defendant at:

3030 Mermaid Ave.
Brooklyn, NY 11224

**SO ORDERED.**

Dated:      **Brooklyn, New York**
            **May 11, 2021**

 /s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

29